## Ph. Glickman, Appellee, v. Crane Company, Appellant.

## Gen. No. 24,805.

1. AUTOMOBILES AND GARAGES, § 3*—*when verdict for plaintiff in action for damage to building by automobile is not manifestly against weight of evidence.* In an action to recover for injury to a building struck by an automobile truck, where it appears that the truck, after colliding with a touring car, after dark, about the middle of the intersection of two streets, bent or broke an iron signpost, went over the curb, injuring it in doing so, and struck plaintiff's brick building, causing the damage complained of, and that its speed at the time of the collision was variously estimated at from 8 to 30 miles an hour, it was *held* that a verdict for plaintiff could not be held to be manifestly against the weight of the evidence.

2. DAMAGES, § 190*—*when competent proof of damage to building struck by automobile exists.* In an action to recover for damage to a building struck by an automobile truck, it cannot be said there was no competent proof of damages where the only witness called on the question testified that the ordinary and usual value, in the city where the building was located, of putting it in proper shape would be a certain sum, which sum was larger than the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

amount recovered, and the cross-examination to which he was subjected in no way affected or qualified his opinion.

Appeal from the Municipal Court of Chicago; the Hon. JOHN R. NEWCOMER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed December 3, 1919.

ALDEN, LATHAM & YOUNG, for appellant; CHARLES MARTIN, of counsel.

WILLIAM B. BAUER and LOUIS ROHR, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

A truck of the defendant, driven by one of its employees, having run into and damaged a building belonging to the plaintiff, the latter brought suit and obtained judgment in the sum of $205.20. On the evening of September 6, 1917, between 7 and 8 o'clock, about dusk, an empty Ford truck, going south on Jefferson street, driven by one Groenendal, chauffeur for the defendant, collided, at about the middle of the intersection of Jefferson and DeKoven streets, with a touring car which had come east on DeKoven street and had turned to go south on Jefferson street. As a result of the collision and the speed at which the cars were going when they met, the Ford truck went on to the southeast, struck and bent or broke an iron signpost, went over the curb, somewhat destroying it, and then struck the brick building at the southeast corner, the property of the plaintiff, doing considerable damage.

The evidence is substantially as follows: Fortuna, a watchman, who stood at the time of the collision, on the northwest corner of the intersection, testified that, when he first saw the Ford truck, about half a block

north of the intersection (which, according to defendant's driver, was 70 to 75 feet), it was going 25 to 30 miles an hour; that afterwards it struck a big lamppost, knocked it over, turned it down and broke it; ran into the curb and damaged it and then went over the parkway and an 8-foot cement sidewalk and ran into the building; that the touring car, after the collision, went on south and stopped in the middle of the next block; that he did not hear either car blow a horn; that the driver of the truck jumped off when it was about 6 feet from the plaintiff's building.   The witness Wellik testified  that the curb was smashed and the iron street signpost bent.   The witness Groenendal, the driver of the Ford truck, testified that "it was kind of dark," that he had his lights on; that he was going south on Jefferson to the garage; that he stopped for about 10 minutes in the middle of the block between Taylor and DeKoven streets to fix up the coils; that he was then about 70 to 75 feet from DeKoven street; that just before he stopped he had been going from 10 to 15 miles an hour; that he started up and then went about 8 miles an hour; that he blew his horn; that there were "a lot of young children around there"; that the front of his truck was in the center of De Koven street when he first saw the touring car; that he did not have much of a view west on DeKoven street on account of the building at the northwest corner; that when he first saw the touring car it was over near the north side of DeKoven street near the curb, going east; that he was then going 12 miles an hour and the touring car 25 miles an hour; that the touring car was white, had side lights lighted and blew no horn; that the touring car struck the Ford truck, when it was in the center of DeKoven street; that it struck it between the fender and the step, about 4 feet from the front of the machine; that he put on the emergency brakes; that when the truck struck the building he

jumped out; that the radiator, fender and right side of the truck were broken; that there were six people in the touring car. On cross-examination he testified that the touring car was only about 5 or 6 feet from him when he first saw it; that the governor on the truck was set at 15 miles.

The witness Beahan, who was standing on the northeast corner, testified that the Ford truck was going about 10 to 12 miles an hour; that the touring car came east on DeKoven street and as it got to Jefferson it went over on the north side of DeKoven, then turned south in Jefferson and struck the Ford truck; that the touring car was going from 25 to 30 miles an hour; that the touring car struck the truck and after the truck went into the building the driver jumped off; that immediately after the collision, some of the men who got out of the touring car "wanted to beat up this man on the truck."

The witness Ptaszek was not able to tell the speed either of the truck or the touring car, although he stated that the touring car was "going at a good rate of speed" and that the truck "was not going very fast," not as fast as the touring car.

The defendant introduced, also, the testimony of two young boys, but their evidence is of very little, if any, import.

The jury brought in a verdict for the plaintiff for $271.20. Counsel for the plaintiff remitted $66, and judgment was then entered for $205.20.

That the defendant owned the Ford truck, and employed the driver that was running it, and that it ran into and damaged the plaintiff's building, is not disputed. But it is the theory of the defendant that the proximate cause of the injury to the plaintiff's building was the negligence in driving the touring car and not negligence in driving the Ford truck. It does not seem to be necessary for us to determine whether or

not the plaintiff made out a prima facie case of trespass by proving (1) that he owned the building; (2) that it was damaged by the Ford truck and (3) that the defendant owned and controlled the Ford truck at the time it ran into the building. There is no doubt, according to some of the very early authorities, that it was unnecessary for the plaintiff in such a case either to plead or put in evidence of negligence. In *Leslie v. Bray*, 3 East 593, Grose, J., said: "Looking into all the cases from the Year Book in 21 H. 7, down to t'e latest decision on the subject, I find the principle to be, that if the injury be done by the act of the party himself at the time, or he be the immediate cause of it, though it happen accidentally or by misfortune, yet he is answerable in trespass." That it is not necessary to prove negligence seems to be the law in a number of jurisdictions. *Hall v. Moorman*, 4 McCord (S. C.) 283; *Beach v. Parmeter*, 23 Pa. St. 196; *Castle v. Duryee*, 2 N. Y. Ct. App. 169. In the following, on the contrary, it has been held to be necessary to prove that the defendant was in some way at fault, and, therefore, guilty of negligence. *Brown v. Kendall*, 6 Cush. (Mass.) 292; *Vincent v. Stinehour*, 7 Vt. 62; *Smith v. Kurruss*, 31 Ill. App. 276. The more reasonable rule seems to be that which requires the proof of negligence. "The contrary rule would obviously be against public policy, because it would impose so great a restraint upon freedom of action as materially to check human enterprise." 6 Thomp. Neg. 624.

In the instant case, however, the statement of claim affirmatively charges the defendant with negligence; and, in making out a prima facie case, the plaintiff presented evidence on that subject. Following that, the defendant then undertook, by way of exculpation, to show that he was without blame and that the proximate cause of the injury was the negligence of the driver of the other car. At the close of the evidence, the jury

were instructed on the subject of negligence, and then found for the plaintiff. After a careful examination of the record, we are now of the opinion that the verdict and judgment thereon must stand.

Considering that it was after dark; that the truck was being driven, according to the testimony, from 8 to 30 miles an hour (Fortuna says 25 to 30 miles, the driver of the truck says 8 miles an hour, and Beahan, the witness for the defendant, says 10 to 12 miles an hour); that the collision occurred about the center of the intersection of two public streets about which were many buildings; that, according to the testimony of the driver of the truck, there were "a lot of young children around there"; that under the circumstances reasonable care would involve careful attention to whatever traffic might be passing either way at the intersection; that it is highly improbable that the Ford truck going at a low rate of speed when struck by the touring car would have been driven through the sign-post and over the curb, somewhat destroying the latter, and into the corner building so as to seriously damage it; that, as to judging the trustworthiness of the witnesses, the jury has a marked advantage over a court of review, we are of the opinion that the evidence does not justify us in holding that the verdict of the jury was manifestly against the weight of the evidence.

Further, it is contended by counsel for the defendant that there was no competent proof of damages. On that subject, only one witness was called. He testified that "the ordinary and usual value in the City of Chicago, at the time the building was injured, of putting it in proper shape" would be "about $300." He was cross-examined, in detail, as to the work he did in repairing the building, but nothing was elicited that affected or qualified the opinion he had already expressed as to the total damage the building had suffered as the result of being struck by the truck. The

contention, therefore, is, in our judgment, untenable.

Finding no error in the record the judgment is affirmed.

*Affirmed.*